UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

COURTNEY DEWAYNE LANAUTE

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

CIVIL ACTION

NUMBER 13-557-SCR

**RULING ON SOCIAL SECURITY APPEAL**

Plaintiff Courtney Dewayne Lanaute brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner"), denying his claim for supplemental security income ("SSI") benefits.

Based on the standard of judicial review under § 405(g), a careful review of the entire administrative record as a whole, and the analysis that follows, the Commissioner's decision is affirmed.

**Standard of Review**

Under § 405(g), judicial review of a final decision of the Commissioner denying disability and SSI benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards. *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If substantial

evidence supports the Commissioner's findings, they are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981);

*Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

A claimant has the burden of proving that he suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. § 416.905. The regulations require the ALJ to apply a five step sequential evaluation to each claim for benefits. 20 C.F.R. § 416.920. In the five step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work. *Masterson*, 309 F.3d at 271.

Listed impairments are descriptions of various physical and mental illnesses and abnormalities generally characterized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. For a claimant to show that the impairment matches a listed impairment he must demonstrate that it meets all of the medical criteria specified in the listing. An impairment that exhibits

only some of the criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 529-32, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. §§ 404.1525; 416.925. The criteria in the medical listings are demanding and stringent. *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir. 1994).

The burden of proving disability rests on the claimant through the first four steps. At the fourth step the Commissioner analyzes whether the claimant can do any of his past relevant work. If the claimant shows at step four that he is no longer capable of performing past relevant work, the burden shifts to the Commissioner to show that the claimant is able to engage in some type of alternative work that exists in the national economy. *Myers*, supra. If the Commissioner meets this burden the claimant must then show that he cannot in fact perform that work. *Boyd*, 239 F.3d at 705.

**Background and Claims of Error**

Plaintiff was 20 years old at the time of the administrative law judge's ("ALJ") decision.[1] Plaintiff attended school until the eleventh grade, and was in special education classes. Plaintiff did not have any past relevant work. AR pp. Plaintiff alleged in his August 10, 2011 SSI application that he became disabled and unable to work beginning February 1, 2011 due to numerous

---

[1] Plaintiff's age placed him in the category of a "younger person." 20 C.F.R. § 416.963(c).

4

conditions - enlarged head, slow learner, hard of hearing in left ear, mild mental retardation, and eye problems. AR pp. 120-26, 160.

After his application was denied at the initial stages the plaintiff requested an ALJ hearing. The hearing was held and after it the ALJ issued an unfavorable decision. AR pp. The ALJ found at the second step that the plaintiff had the following severe impairment - decreased visual acuity. The ALJ concluded that two other alleged impairments - attention deficit hyperactivity disorder ("ADHD") and learning disorder - were not severe. AR p. 16. At the third step the ALJ concluded that the plaintiff's impairments did not meet or medically equal the severity of any listed impairment. The ALJ then evaluated the plaintiff's residual functional capacity ("RFC") to determine whether, despite his severe impairment, the plaintiff was able to do any other work in the national economy.[2] The ALJ found the plaintiff had the RFC to perform a full range of work at all exertional levels, however, the plaintiff had nonexertional impairments due to his visual acuity impairment. Plaintiff could not work at heights or around heavy machinery. AR pp. 16-19.

---

[2] Residual functional capacity is a measure of a claimant's capacity to do physical and mental work activities on a regular and sustained basis. It is the foundation of the findings at steps four and five. 20 C.F.R. § 416.945. Plaintiff in this case had no past relevant work. Therefore, the ALJ proceeded to the fifth step.

5

The ALJ made a finding based on Rule 204.0 of the Medical - Vocational Guidelines and Social Security Ruling ("SSR") 85-15 that these types of limitations would have little or no impact on work that exists at all exertional levels. Therefore, he found it was appropriate to rely on the Medical-Vocational Guidelines, and at the fifth step he applied those guidelines to reach the finding the plaintiff is not disabled. AR pp. 19-20.[3]

In his appeal memorandum the plaintiff argued that the following errors require reversal and remand under sentence four of § 405(g): (1) the ALJ did not apply the correct legal standard at the second step, and substantial evidence does not support the finding that the ADHD and learning disorder impairments were not severe; (2) the ALJ failed to recontact clinical psychologist Sandra Durdin, who conducted a consultative mental status examination on June 15, 2011; and, (3) at the fifth step the ALJ was required to obtain vocational expert testimony and could not rely on the Medical-Vocational Guidelines to support the finding the plaintiff could do other work.

## Analysis

**Neither the record nor the regulations and case law support the plaintiff's claims of legal error in the ALJ's decision.**

The Fifth Circuit held in *Stone v. Heckler*, 752 F.2d 1099

---

[3] Plaintiff exhausted his administrative remedies before filing this action for judicial review. The ALJ's decision is the Commissioner's final decision for purposes of judicial review.

(Cir. 1985), that the severity regulation[4] must be construed as setting forth the following standard in determining whether a claimant's impairment is severe: "'[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Stone*, 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984) and citing *Martin v. Heckler*, 748 F.2d 1027, 1032 (5th Cir.1984); *Davis v. Heckler*, 748 F.2d 293, 296 (5th Cir.1984)). Plaintiff argued the ALJ's decision does not demonstrate that the correct standard was applied because the ALJ failed to cite *Stone*, or state that he adopted the construction of the regulation that *Stone* requires.

Careful review of the ALJ's decision does not support the plaintiff's argument that the ALJ did not apply the *Stone* standard. Although the ALJ did not specifically cite *Stone* and did not recite the exact language of the case, the ALJ's decision shows that in the analysis at the second step he used language sufficiently close to *Stone* to demonstrate that the correct legal standard was used. This language is found at two places in the ALJ's decision. First, in the applicable law section, the ALJ noted the regulation on severity, and then stated that an impairment or combination of

---

[4] 20 C.F.R. § 416.920(c).

7

impairments is "not severe" when medical and other evidence establish "only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work."  AR p. 15.  The ALJ also cited several SSRs, which clarify the interpretation of the severity regulation and explain that the standard for determining severity is that set forth in *Stone* and similar court decisions.[5]  Second, in the Findings of Fact and Conclusions of Law portion of his decision, the ALJ concluded that the ADHD and learning disorder did not cause "more than minimal limitations in the claimant's ability to perform basic mental work activities," and were therefore non-severe.  AR p. 16.  The ALJ's use of the terms "slight abnormality" and "no more than a minimal effect" on the ability to work convey the essence of the *Stone* standard and adequately demonstrate that the ALJ used the correct legal standard at the second step.[6]  Therefore, the plaintiff's claim that the ALJ failed to apply the correct legal standard at step two is without merit.

Plaintiff also argued that it was legal error for the ALJ not

---

[5] The ALJ cited SSR 85-28 and SSR 96-3p.  AR p. 15.  See, SSR 85-28, TITLES II AND XVI: MEDICAL IMPAIRMENTS THAT ARE NOT SEVERE, 1985 WL 56856 (S.S.A. 1985); SSR 96-3p, TITLES II AND XVI: CONSIDERING ALLEGATIONS OF PAIN AND OTHER SYMPTOMS IN DETERMINING WHETHER A MEDICALLY DETERMINABLE IMPAIRMENT IS SEVERE, 1996 WL 374181 (S.S.A. 1996).

[6] *See*, *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)(magic words not required; case should be remanded only where there is no indication the ALJ applied the correct standard); *Lopez v. Astrue*, 854 F.Supp.2d 415, 425 (N.D. Tex. 2012).

8

to recontact the consultative clinical psychologist. Plaintiff contended that the regulations required the ALJ to do so because Durdin's report was full of conflicts and ambiguities, which the ALJ simply ignored instead of complying with his duty to recontact and resolve them.

The regulation relied on by the plaintiff, 20 C.F.R. § 416.912(e), provides in relevant part:

> (e) *Recontacting medical sources.* When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

The duty to further develop the record by recontacting medical sources for clarification or additional evidence arises only when the evidence received from them is inadequate to determine whether the claimant is disabled, and there is insufficient objective and opinion evidence in the record from treating and other sources. Plaintiff's argument essentially is his interpretation of Durdin's report and does not show that the report or record was inadequate to determine disability. Furthermore, the plaintiff's argument

9

also does not demonstrate that any prejudice resulted from not recontacting Durdin.[7] Plaintiff offered no suggestion as to what additional information or records Durdin could have provided to remedy the alleged conflicts and ambiguities in her report, or how additional information from Durdin would have had any effect on the ALJ's decision.[8] In summary, the plaintiff failed to demonstrate the ALJ had a duty under the regulation to recontact Durdin, and even if the ALJ erred by not recontacting her, the plaintiff failed to establish he was prejudiced by the error.

Plaintiff's final claim of legal error was that the ALJ was required, but failed, to obtain vocational expert evidence to support the finding at the fifth step. Plaintiff argued that the ALJ had to rely on a vocational expert rather than the Medical-Vocational Guidelines, because he had several nonexertional impairments which limited his ability to perform work-related

---

[7] *See*, *Jones v. Astrue*, 691 F.3d 730, 733-34 (5th Cir. 2012); *Cornett v. Astrue*, 261 Fed.Appx. 644 (5th Cir. 2008); *Taylor v. Commissioner of Social Security*, 2014 WL 4678844 (W.D. La. Sept. 18, 2014).

[8] Effective March 2012, the regulation containing the subsection on recontacting medical sources, 20 C.F.R § 404.1512 and § 416.912, was amended to eliminate this requirement. Therefore, the current regulation no longer contains paragraph (e) "Recontacting medical sources." The purpose of the change was to give adjudicators more flexibility in determining how to best obtain information, with the goal of making disability determinations more quickly and efficiently. 77 FR 10651-01, 2011 WL 7404303 (F.R. Feb. 23, 2012). Under the revised regulations the ALJ may recontact the medical source if the ALJ has insufficient evidence to determine whether the claimant is disabled. *Jones v. Colvin*, 2015 WL 631670 (N.D. Tex. Feb. 13, 2015).

activities - learning disorder, ADHD and visual problems.

Review of the ALJ's analysis at the fifth step shows that this claim of error is not supported by the applicable law and regulations. The ALJ found that the plaintiff has the RFC to perform a full range of work at all exertional levels,[9] and that the plaintiff's only impairment/limitation was a non-exertional one - decreased visual acuity. As a result of this impairment the ALJ included a restriction that the plaintiff would not be able to engage in work at heights or around heavy machinery. The ALJ acknowledged in his decision that generally if a claimant suffers only nonexertional limitations, expert vocational evidence is required at the fifth step to establish the existence of other work the plaintiff can do in the national economy.[10] AR p. 20.

However, the ALJ determined that the facts in this case allowed reliance on Rule 204.00 and SSR 85-15. These are administrative findings and policy statements which state that this type of nonexertional restriction has little or no affect on the available job base, and would not significantly affect the range of

---

[9] All exertional levels would include the ability to perform very heavy, heavy, medium, light and sedentary work. 20 C.F.R. § 416.967(a)-(e).

[10] *See, Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986); *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

work existing in the national economy.[11] Therefore, the ALJ could and did rely on the Medical-Vocational Guidelines to make his finding at the fifth step, and he was not required to obtain vocational expert evidence. The ALJ's analysis and determination at the fifth step is supported by the contents of the regulation and SSR cited by the ALJ and the relevant, persuasive case law.[12] AR p. 20. Thus, the plaintiff failed to establish legal error on this basis at step five.

**Substantial evidence supports the ALJ's findings at each step of the disability analysis.**

The analysis above demonstrates that the ALJ applied the correct legal standards. Therefore, the only remaining inquiry is

---

[11] SSR 85-15, TITLES II AND XVI: CAPABILITY TO DO OTHER WORK–THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857 *8 (S.S.A. 1985); 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 2, Rule 204.00.

[12] *See*, *Stokes v. Shalala*, 7 F.3d 229 (5th Cir. 1993) (unpublished)(vocational expert not required where claimant capable of work at all exertional levels that fits profile of Rule 204.00); *Edwards v. Colvin*, 2014 WL 3797366 (S.D. Tex. July 30, 2014)(where contents of SSR 85-15 and SSR 96-9p showed that plaintiff's nonexertional limitations did not significantly erode the jobs available at the sedentary level, ALJ did not err in relying on Medical-Vocational Guidelines at the fifth step); *Bruce v. Astrue*, 2011 WL 4435301 (N.D. Tex. Sept. 7, 2011)(ALJ could rely on Rule 204.00 and did not have to elicit vocational expert testimony when plaintiff had an RFC for all exertional levels and only nonexertional limitation found was a limitation to simple work); *Eason v. Commissioner,* 2009 WL 278965 (W.D. La. Feb. 5, 2009) (decision supported by substantial evidence where ALJ found no exertional limitations and some nonexertional limitations caused by seizure disorder consisting of inability to work at unprotected elevation and near moving machinery and then relied on Rule 204.00 to support the finding at the fifth step).

whether his findings are supported by substantial evidence. Plaintiff argued that substantial evidence did not support the ALJ's conclusion at step two that the ADHD and learning disorder were not severe.

Review of the record as a whole establishes that there is substantial evidence for the ALJ's nonseverity finding. The mere existence of an impairment, such as ADHD or learning disorder, does not establish that it is severe - that it affects an individual's ability to perform work-related activities.[13] Evidence in the record showed that after February 1, 2011, the date the plaintiff alleged as the onset of his disability, the plaintiff went to only one office visit with Dr. Kumari Moturu. Dr. Moturu's report on February 17, 2011 showed the plaintiff was kept on the same medication for ADHD, and was told to return for a follow-up appointment in three months. However, there is no record of any more office visits or treatment by Dr. Moturu after February 17, 2011. Both Durdin's report from June 2011 and the hearing testimony from April 2012 corroborate that after this date the plaintiff was not receiving any treatment for ADHD or any other condition. Nor was the plaintiff taking any medication. Durdin stated in her report the plaintiff had no current medications, but he had some medications he had not taken that were prescribed for

---

[13] *See*, *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *Doddy v. Commissioner,* 2014 WL 1268567 (E.D. Tex. March 27, 2014); *Ramsey v. Astrue*, 2012 WL 3257860 (W.D. La. July 12, 2012).

13

him in March 2010 by Dr. Moturu. Because of the plaintiff's extreme lack of cooperation and malingering, Durdin was unable to obtain valid tests results/assessment of the plaintiff's intellectual functioning.[14]

Nevertheless, Durdin's report of her mental status evaluation contains other relevant findings on examination, which support the conclusion that the plaintiff's ADHD and alleged learning disorder were not severe impairments. For example, Durdin observed the following: plaintiff's speech and language were fully intelligible; his thought content and organization were logical; he had no perceptual distortions; he had adequate ability to understand, remember and carry out simple instructions, and he was not inattentive, but was focused and understood directions. AR pp. 217-19. Plaintiff's daily activities and information from his consultative physical examination also support the conclusion these alleged mental impairments are not severe. Plaintiff was able to take care of his own personal needs and help with household and yard chores. Dr. Michael Day, who performed a physical evaluation on July 9, 2011, provided a report showing that the plaintiff had an entirely normal physical examination and no limitations in

---

[14] Information in the record shows that in 2000 the plaintiff was determined to be disabled under Listing 112.05, but in 2009 benefits were discontinued based on medical improvement. The psychologists who administered psychological tests in 2007 and 2008 were unable to obtain valid test scores and diagnose the plaintiff's mental capacity largely due to malingering and lack of sufficient effort. AR pp. 188-89.

performing any work-related activities. Similar to Durdin, Dr. Day also reported that the plaintiff failed to cooperate with some parts of the examination, such as questioning and assessment of his vision. AR pp. 139-42, 224-27. Dr. Day noted that there was no objective medical evidence to support any alleged condition of an enlarged head, and that he observed no documentation or evidence of mental retardation. AR p. 227.

The above evidence considered as whole is relevant and sufficient for a reasonable mind to accept as adequate support for the ALJ's finding the plaintiff's alleged ADHD and learning disorder impairments were not severe. This same evidence provides substantial support for the ALJ's RFC determination - the ability to perform a full range of work at all exertional levels but unable to work at heights or around heavy machinery.[15] Plaintiff pointed to evidence from his school records or other evidence in the record that supports his claim those impairments were severe. The fact that there is evidence in the record to support his arguments does not negate the substantial evidence that supports the ALJ's conclusion. Therefore, the evidence cited by the plaintiff is not a basis to reverse the ALJ's findings.[16]

---

[15] Not including RFC limitations attributable to ADHD or a learning disorder was not in error, based on the ALJ's finding these impairment were nonsevere.

[16] Judicial review under § 405(g) does not require that all of the evidence support the ALJ's findings. Even if substantial
(continued...)

Finally, as explained in the previous section, based on the ALJ's severity and RFC findings and Rule 204.00 and SSR 85-15, the ALJ relied on the Medical-Vocational Guidelines at the fifth step. The contents of the administrative findings relied on by the ALJ provide substantial evidence to support the conclusion that given the plaintiff's RFC, age and education, there are a significant number of jobs existing in the national economy that the plaintiff is able to perform. Therefore, the plaintiff is not disabled within the meaning of the Social Security Act.

## Conclusion

Based on the standard of judicial review under § 405(g), and a careful review of the entire administrative record as a whole, the plaintiff's claims of error are without merit. The analysis above demonstrates that the proper legal standards were applied and that substantial evidence supports the determination that the

---

[16](...continued)
evidence supports the claimant's position this is not a ground for reversal. As long as the ALJ's finding or decision is supported by substantial evidence in the record as a whole it must be affirmed. § 405(g); *see*, *Carroll v. Dept. Health, Ed. and Welfare*, 470 F.2d 252, 254, n. 4 (5th Cir. 1972)(as long as there is substantial evidence to support the Commissioner's determination, the quantity of evidence submitted by the claimant is irrelevant in terms of judicial review); *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001); *Palomino v. Barnhart,* 515 F.Supp.2d 705, 710 (W.D.Tex. 2007), citing, *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001)(when record as a whole indicates a mixed collection of evidence regarding plaintiff's impairments and their impact, Commissioner's decision upheld as long as there is substantial evidence to support it).

plaintiff is not disabled.

Accordingly, under sentence four of 42 U.S.C. § 405(g), the final decision of Carolyn W. Colvin, Acting Commissioner of Social Security, denying the application for supplemental security income (SSI) benefits filed by plaintiff Courtney Dewayne Lanaute, is affirmed.

A separate judgment will be issued.

Baton Rouge, Louisiana, March 30, 2015.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE